Present: Hassell, C.J., Koontz, Kinser, Lemons, and Millette,
         JJ., and Russell and Lacy, S.JJ.

SHELDON A. CYPRESS

v.  Record No. 070815

COMMONWEALTH OF VIRGINIA                    OPINION BY
                                    JUSTICE CYNTHIA D. KINSER
MARK A. BRISCOE                         September 16, 2010

v.  Record No. 070817

COMMONWEALTH OF VIRGINIA

        ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

    These two appeals are before this Court on remand from the

Supreme Court of the United States.  In a per curiam opinion,

the Supreme Court vacated this Court's judgment in Magruder v.

Commonwealth, 275 Va. 283, 657 S.E.2d 113 (2008), and remanded

the cases for further proceedings "not inconsistent with the

opinion" in Melendez-Diaz v. Massachusetts, 557 U.S. ___, 129

S.Ct. 2527 (2009).  Briscoe v. Virginia, 559 U.S. ___, ___, 130

S.Ct. 1316, 1316 (2010).  The specific legal question we decide

on remand is a narrow one: in light of the decision in Melendez-

Diaz, did the admission into evidence of certificates of

analysis pursuant to former Code §§ 19.2-187 and -187.1 violate

rights secured by the Confrontation Clause?  We conclude that it

did.

PROCEDURAL HISTORY

In Magruder, this Court affirmed the judgments of the Court of Appeals of Virginia upholding the respective convictions of the defendants, Sheldon A. Cypress and Mark A. Briscoe.[1]  275 Va. at 309, 657 S.E.2d at 127.  Cypress had been convicted in the Circuit Court of the City of Chesapeake for possession of cocaine with the intent to distribute, second or subsequent offense, in violation of Code § 18.2-248(C).  Id. at 291, 657 S.E.2d at 116.  Briscoe had been convicted in the Circuit Court of the City of Alexandria for possession with the intent to distribute cocaine, in violation of Code § 18.2-248(C), and unlawful transportation of cocaine into the Commonwealth with the intent to distribute, in violation of Code § 18.2-248.01. Id. at 293, 657 S.E.2d at 117.

In each trial, the Commonwealth introduced, over the respective defendant's objection, a certificate of analysis pursuant to former Code § 19.2-187.[2]  Id. at 291, 293, 657 S.E.2d

---

[1] We also affirmed the judgment of the Court of Appeals upholding a conviction of Michael Ricardo Magruder.  Magruder, 275 Va. at 309, 657 S.E.2d at 127.  That conviction is not at issue in these appeals.

[2] The certificate of analysis admitted into evidence during Cypress' trial confirmed that the substance at issue was 60.5 grams of cocaine.  Magruder, 275 Va. at 290, 657 S.E.2d at 116. In Briscoe's trial, the Commonwealth introduced two certificates of analysis, which together established that certain confiscated substance was "'solid material' cocaine" totaling 36.578 grams. Id. at 292, 657 S.E.2d at 117.

2

116, 117.  That statute provided that a certificate of analysis

was admissible at trial as evidence of the facts stated therein

and the results of the analysis if the certificate was duly

attested by the person performing the analysis and was filed

with the clerk of the trial court at least seven days before

trial.  Former Code § 19.2-187 (2008).  Pursuant to former Code

§ 19.2-187.1, an accused, however, had the right to call the

person performing the analysis as an adverse witness.  Former

Code § 19.2-187.1 specifically stated:

> The accused in any hearing or trial in which a
> certificate of analysis is admitted into evidence
> . . . shall have the right to call the person
> performing such analysis or examination or
> involved in the chain of custody as a witness
> therein, and examine him in the same manner as if
> he had been called as an adverse witness. Such
> witness shall be summoned and appear at the cost
> of the Commonwealth.[3]

---

[3] Shortly after the decision in Melendez-Diaz, the General Assembly amended former Code §§ 19.2-187 and -187.1.  2009 Acts chs. 1, 4 (Spec. Sess. I).  In pertinent part, the current version of Code § 19.2-187 states:

> In any hearing or trial of any criminal offense
> . . . , a certificate of analysis of a person
> performing an analysis or examination, duly
> attested by such person, shall be admissible in
> evidence as evidence of the facts therein stated
> and the results of the analysis or examination
> referred to therein, provided . . . (ii) the
> requirements of subsection A of § 19.2-187.1 have
> been satisfied and the accused has not objected
> to the admission of the certificate pursuant to
> subsection B of § 19.2-187.1.

Section 19.2-187.1, in turn, now states in relevant part:

3

Cypress and Briscoe each argued at trial and on appeal that the introduction of a certificate of analysis without any testimony from the forensic analyst who performed the testing

A.  In any trial and in any hearing other than a preliminary hearing, in which the attorney for the Commonwealth intends to offer a certificate of analysis into evidence pursuant to § 19.2-187, the attorney for the Commonwealth shall:

1.  Provide by mail, delivery, or otherwise, a copy of the certificate to counsel of record for the accused, or to the accused if he is proceeding pro se, at no charge, no later than 28 days prior to the hearing or trial;

2.  Attach to the copy of the certificate so provided under subdivision 1 a notice to the accused of his right to object to having the certificate admitted without the person who performed the analysis or examination being present and testifying;

. . . .

B.  The accused may object in writing to admission of the certificate of analysis, in lieu of testimony, as evidence of the facts stated therein and of the results of the analysis or examination. . . . If timely objection is made, the certificate shall not be admissible into evidence unless (i) the testimony of the person who performed the analysis or examination is admitted into evidence describing the facts and results of the analysis or examination during the Commonwealth's case-in-chief at the hearing or trial and that person is present and subject to cross-examination by the accused, (ii) the objection is waived by the accused or his counsel in writing or before the court, or (iii) the parties stipulate before the court to the admissibility of the certificate.

4

and reported the results of the analysis violated his rights guaranteed by the Confrontation Clause. Magruder, 275 Va. at 297, 657 S.E.2d at 120. We disagreed. Assuming that a certificate of analysis is "testimonial" under Crawford v. Washington, 541 U.S. 36 (2004), and applying then-controlling Supreme Court precedent, this Court held:

> Pursuant to [former] Code § 19.2-187.1, the defendants could have insured the physical presence of the forensic analysts at trial by issuing summons for their appearance at the Commonwealth's cost, or asking the trial court or Commonwealth to do so. At trial, the defendants could have called the forensic analysts as witnesses, placed them under oath, and questioned them as adverse witnesses, meaning the defendants could have cross-examined them. . . . In short, if the defendants had utilized the procedure provided in [former] Code § 19.2-187.1, they would have had the opportunity to cross-examine the forensic analysts. Contrary to the defendants' position, the Confrontation Clause does not insure that opportunity before a certificate of analysis is admitted into evidence.

Magruder, 275 Va. at 299, 657 S.E.2d at 120-21 (citations omitted). Rejecting the defendants' argument that former Code § 19.2-187.1 impermissibly burdened the exercise of their Confrontation Clause rights by requiring them to take certain actions to preserve those rights, the Court noted that an accused is frequently required to take affirmative steps to assert constitutional rights. Id. at 299-300, 657 S.E.2d at 121.

5

The defendants also claimed that the provisions of former Code § 19.2-187.1 shifted the burden of producing evidence by requiring them to call the forensic analysts in order to confront those witnesses. Id. at 301, 657 S.E.2d at 122. The Court, however, held the argument "[was] not cognizable under the Confrontation Clause [but rather] raise[d] due process concerns that [were] not properly before [the Court]." Id. We further explained that because the defendants had not exercised their rights under former Code § 19.2-187.1 to have the forensic analysts at trial, "they were never in the position of being forced, over their objection, to call a forensic analyst as a witness." Id. Thus, "'the trial court never had occasion to address the proper order of proof.'" Id. (quoting Brooks v. Commonwealth, 49 Va. App. 155, 168, 638 S.E.2d 131, 138 (2006)).

Finally, the Court concluded that,

> [b]ased on the provisions of [former] Code
> §§ 19.2-187 and 19.2-187.1, no criminal
> defendant can seriously contend that he is
> not on notice that a certificate of analysis
> will be admitted into evidence without
> testimony from the person who performed the
> analysis unless he utilizes the procedure
> provided in [former] Code § 19.2-187.1.

Id. at 304, 657 S.E.2d at 124. Thus, we held "that the procedure in [former] Code § 19.2-187.1 adequately safeguard[ed] a criminal defendant's rights under the Confrontation Clause and that [Cypress' and Briscoe's] failure . . . to utilize that

procedure waived their right to be confronted with the forensic analysts." Id. at 305, 657 S.E.2d at 124.

Cypress and Briscoe petitioned the United States Supreme Court for writs of certiorari. Briscoe v. Virginia, 557 U.S. ___, ___, 129 S.Ct. 2858, 2858 (2009). Subsequently, the Supreme Court decided Melendez-Diaz. There, the trial court admitted into evidence three certificates of analysis establishing that substances seized by the police and connected to the defendant contained cocaine. 557 U.S. at ___, 129 S.Ct. at 2530-31. Pursuant to Massachusetts General Laws Annotated, Chapter 111, § 13, the certificates served "as prima facie evidence of the composition, quality, and the net weight" of the substances analyzed. 557 U.S. at ___, 129 S.Ct. at 2531 (internal quotation marks omitted). Although the forensic analysts who tested the substances swore to the certificates before a notary public as required by the statute, they did not testify at trial. Id. The defendant objected, claiming that the decision in Crawford required the analysts to testify in person. Id.

The Supreme Court in Melendez-Diaz first held that the certificates of analysis fell within the "'core class of testimonial statements'" described in Crawford because they were "quite plainly affidavits" and were "incontrovertibly a 'solemn declaration or affirmation made for the purpose of establishing

7

or proving some fact.'"  Id. at ___, 129 S.Ct. at 2532 (quoting Crawford, 541 U.S. at 51) (internal quotation marks omitted). Thus, "[a]bsent a showing that the analysts were unavailable to testify at trial and that the petitioner had a prior opportunity to cross-examine them, petitioner was entitled to 'be confronted with' the analysts at trial."  Id. (quoting Crawford, 541 U.S. at 54) (internal quotation marks omitted).  In response to the argument that the forensic analysts were not "accusatory" witnesses and thus not subject to confrontation, the Supreme Court pointed out that the analysts testified against the defendant by proving the substance he possessed was cocaine. Id. at ___, 129 S.Ct. at 2533.  Contrasting the Confrontation Clause and the Compulsory Process Clause, the Supreme Court stated: "The text of the [Sixth] Amendment contemplates two classes of witnesses - those against the defendant and those in his favor.  The prosecution must produce the former [and] the defendant may call the latter."  Id. at ___, 129 S.Ct. at 2534.

The Supreme Court then addressed the argument relevant to these appeals: whether the defendant's "ability to subpoena the analysts" preserved his confrontation rights.  Id. at ___, 129 S.Ct. at 2540.  Concluding such power to be "no substitute for the right of confrontation," the Supreme Court explained:

> Unlike the Confrontation Clause, those
> provisions [of state law or the Compulsory
> Process Clause] are of no use to the

8

defendant when the witness is unavailable or simply refuses to appear. Converting the prosecution's duty under the Confrontation Clause into the defendant's privilege under state law or the Compulsory Process Clause shifts the consequences of adverse-witness no-shows from the State to the accused. More fundamentally, <u>the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court</u>. Its value to the defendant is not replaced by a system in which the prosecution presents its evidence via <u>ex</u> <u>parte</u> affidavits and waits for the defendant to subpoena the affiants if he chooses.

<u>Id.</u> (emphasis added) (citations omitted).

The Supreme Court, nevertheless, made clear that an accused could waive his confrontation rights "by fail[ing] to object to the offending evidence" and that "States may adopt procedural rules governing the exercise of such objections." <u>Id.</u> at ___ n.3, 129 S.Ct. at 2534 n.3. Noting that many States "permit the defendant to assert (or forfeit by silence) his Confrontation Clause right after receiving notice of the prosecution's intent to use a forensic analyst's report," the Supreme Court described "notice-and-demand statutes":

In their simplest form, notice-and-demand statutes require the prosecution to provide notice to the defendant of its intent to use an analyst's report as evidence at trial, after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial.

<u>Id.</u> at ___, 129 S.Ct. at 2540-41.

9

Such statutes, according to the Supreme Court,

> shift no burden whatever [because] [t]he defendant <u>always</u> has the burden of raising his Confrontation Clause objection; notice-and-demand statutes simply govern the <u>time</u> within which he must do so.  States are free to adopt procedural rules governing objections.  It is common to require a defendant to exercise his rights under the Compulsory Process Clause in advance of trial . . . .  There is no conceivable reason why he cannot similarly be compelled to exercise his Confrontation Clause rights before trial.

<u>Id.</u> at ___, 129 S.Ct. at 2541 (citation omitted).  The Supreme Court specifically cited with approval three such "notice-and-demand" statutes, Georgia Code Annotated § 35-3-154.1, Ohio Revised Code Annotated § 2925.51(C), and Section 4 of Article 38.41 of the Texas Code of Criminal Procedure Annotated, as well as the decision in <u>Hinojos-Mendoza v. People</u>, 169 P.3d 662, 670 (Colo. 2007), which approved Colorado's notice-and-demand statute.[4]

In conclusion, the Supreme Court held that "[t]he Sixth Amendment does not permit the prosecution to prove its case via <u>ex</u> <u>parte</u> out-of-court affidavits, and the admission of such evidence against Melendez-Diaz was error."  <u>Melendez-Diaz</u>, 557 U.S. at ___, 129 S.Ct. at 2542.  Thus, the Supreme Court

---

[4] Colorado Revised Statutes § 16-3-309(5) allows a laboratory report to be admitted as evidence but permits a defendant to request that the person performing the analysis testify live on behalf of the State at a criminal trial.

10

reversed the judgment of the Appeals Court of Massachusetts.
<u>Id.</u>

Following its decision in <u>Melendez-Diaz</u>, the Supreme Court granted the petitions filed by Briscoe and Cypress, vacated the judgments, and remanded the cases for further proceedings "not inconsistent with the opinion." <u>Briscoe</u>, 559 U.S. at ___, 130 S.Ct. at 1316.

ANALYSIS

In light of the decision in <u>Melendez-Diaz</u>, the question now before us is whether the admission of the certificates of analysis pursuant to former Code §§ 19.2-187 and -187.1 violated the rights of Cypress and Briscoe under the Confrontation Clause. To answer this question, we initially decide an issue that we did not reach in <u>Magruder</u>: whether the certificates of analysis that were admitted into evidence in the defendants' trials were "testimonial." We conclude that they were. As in <u>Melendez-Diaz</u>, each certificate contained the forensic analyst's signature and attestation that she performed the analysis and that the certificate accurately reflected the results of the analysis. <u>Magruder</u>, 275 Va. at 290-92, 657 S.E.2d at 116-17. In each instance, the certificate established that the substance analyzed was cocaine and the amount of such cocaine. <u>Id.</u> at 290, 292, 657 S.E.2d at 116-17. Thus, the certificates set forth information akin to the testimony a forensic analyst would

11

be expected to give on direct examination and were "functionally identical to live, in-court testimony." Melendez-Diaz, 557 U.S. at ___, 129 S.Ct. at 2532.

When we previously decided that the provisions of former Code § 19.2-187.1 adequately safeguarded a criminal defendant's rights under the Confrontation Clause, we focused on whether that statutory procedure supplied the "'elements of confrontation - physical presence, oath, cross-examination, and observation of demeanor by the trier of fact.'" Magruder, 275 Va. at 298-99, 657 S.E.2d at 120 (quoting Maryland v. Craig, 497 U.S. 836, 846 (1990)). We concluded that it did, primarily because an accused could have guaranteed the physical presence of a forensic analyst at trial by issuing a summons for his/her appearance at the Commonwealth's cost, or by asking the trial court or the Commonwealth to do so. Id. at 299, 657 S.E.2d at 120-21. The accused then could have called the analyst as a witness, placed the analyst under oath, and cross-examined him/her as an adverse witness. Id. at 299, 675 S.E.2d at 121. We also held that the question whether the procedure set forth in former Code § 19.2-187.1 shifted the burden of producing evidence by requiring a defendant to call a forensic analyst was not cognizable under the Confrontation Clause but rather was a due process concern. Id. at 301, 657 S.E.2d at 122.

12

The Supreme Court, however, held that "the ability to subpoena the analysts[,] whether pursuant to state law or the Compulsory Process Clause[,] is no substitute for the right of confrontation" in part because "the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court." Melendez-Diaz, 557 U.S. at ___, 129 S.Ct. at 2540. Examining the text of the Sixth Amendment, the Supreme Court explained that an accused's right to be confronted with the witnesses "'against him'" requires the prosecution to produce such witnesses. Id. at ___, 129 S.Ct. at 2534 (quoting U.S. Const. amend. VI.). In short, the Supreme Court held that a defendant's rights under the Confrontation Clause cannot be "replaced by a system in which the prosecution presents its evidence via ex parte affidavits and waits for the defendant to subpoena the affiants if he chooses." Id. at ___, 129 S.Ct. at 2540.

While former Code § 19.2-187 informed an accused that a certificate of analysis would be introduced into evidence without testimony from the forensic analyst, the procedure set forth in former Code § 19.2-187.1 required the accused to call the analyst to the witness stand. Specifically, former Code § 19.2-187.1 gave a defendant the "right to call" the analyst "as a witness"; it did not require the Commonwealth to call the

13

forensic analyst.  In fact, the language in former Code § 19.2-187.1 allowing a defendant to examine the forensic analysts "as if he had been called as an adverse witness" presupposed that the Commonwealth had in fact not called the analyst as a witness against the defendant.  Although former Code § 19.2-187.1 did allow a defendant to cross-examine the forensic analyst if the defendant chose to call him/her, the Supreme Court in Melendez-Diaz held that such a system runs afoul of a defendant's rights under the Confrontation Clause.  This is so because it impermissibly relieves the prosecution of its burden to present its witnesses against a defendant and imposes a burden on the defendant to bring into court and call those adverse witnesses.  Melendez-Diaz, 557 U.S. at ___, 129 S.Ct. at 2540.  Calling witnesses against the defendant is "the prosecution's duty" and cannot be "[c]onvert[ed] . . . into the defendant's privilege under state law."  Id.

Former Code §§ 19.2-187 and -187.1 are not analogous to the type of permissible "notice-and-demand" statutes discussed in Melendez-Diaz.  The three notice-and-demand statutes cited by the Supreme Court all require the prosecution to give a defendant pretrial notice of its intent to use a forensic analyst's report and allow the defendant to object to the use of the report absent testimony from the analyst.  Georgia Code Annotated § 35-3-154.1 states that a report "of the methods and

14

findings of any examination or analysis conducted by an employee of the state crime laboratory . . . is prima-facie evidence . . . of the facts contained therein" and requires the prosecution to serve a defendant with a copy of the report "prior to the first proceeding in which the report is to be used against the defendant." Ga. Code Ann. § 35-3-154.1(a), (c). The statute further states: "The defendant may object in writing any time after service of the report, but at least ten days prior to trial, to the introduction of the report," in which case "the judge shall require the employee to be present to testify." Ga. Code Ann. § 35-3-154.1(e).

Similarly, Ohio Revised Code Annotated § 2925.51 makes certain laboratory reports prima facie evidence and requires the prosecution to serve a copy of the report on a defendant prior to its first use at trial against the defendant. Ohio Rev. Code Ann. § 2925.51(A)-(B). That statute, however, provides that "[t]he report shall not be prima[]facie evidence . . . if the accused . . . demands the testimony of the person signing the report, by serving the demand upon the prosecuting attorney." Ohio Rev. Code Ann. § 2925.51(C). Finally, Sections 1 and 4 of Article 38.41 of the Texas Code of Criminal Procedure Annotated state that a certificate of analysis is admissible evidence "without . . . the analyst personally appearing in court," but it must be provided to the defendant at least twenty days before

15

trial commences.  "The certificate is not admissible [if] the opposing party files a written objection to the use of the certificate" at least ten days before trial.  Tex. Code Crim. Proc. Ann., art. 38.42, § 4.

Although former Code § 19.2-187 allowed an accused to receive a copy of a certificate of analysis by requesting such from the clerk of court or the Commonwealth's Attorney, neither that statute nor former Code § 19.2-187.1 allowed the accused to object to the admission of the certificate unless the Commonwealth called the forensic analyst as a witness.  In other words, the former statutory framework did not contain the type of "notice-and-demand" procedures that the Supreme Court indicated are sufficient to safeguard an accused's rights under the Confrontation Clause.  As the Supreme Court explained, the simplest form of "notice-and-demand" statutes "require the prosecution to provide notice to the defendant of its intent to use an analyst's report as evidence at trial, after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial."  Melendez-Diaz, 557 U.S. at ___, 129 S.Ct. at 2541.  While a defendant "always has the burden of raising his Confrontation Clause objection," former Code § 19.2-187.1 did more than merely "govern the time within which he must do so."  Id.

16

Thus, in light of the decision in Melendez-Diaz, we now hold that the procedure established in former Code § 19.2-187.1 did not adequately safeguard a criminal defendant's rights under the Confrontation Clause.  Accordingly, in both Cypress' and Briscoe's trials, the admission into evidence of the certificates of analysis at issue without testimony from the forensic analysts violated the Confrontation Clause.  The respective circuit courts erred in admitting the certificates.  Further, because former Code § 19.2-187.1 placed an impermissible burden on Cypress and Briscoe to call the forensic analysts as adverse witnesses and did not adequately protect their Confrontation Clause rights, neither defendant waived his Confrontation Clause objection by failing to utilize the statutory procedure.  See Magruder, 275 Va. at 294, 657 S.E.2d at 118 ("The dispositive issue before us is whether . . . [former] Code § 19.2-187.1 adequately protects a criminal defendant's rights under the Confrontation Clause of the Sixth Amendment, and if so, whether [the defendants] waived their Confrontation Clause challenges.") (emphasis added).

This conclusion, however, does not end our analysis with regard to Briscoe.  The Commonwealth argues that the admission of the certificates of analysis in Briscoe's trial, if error, was nevertheless harmless.  We agree.

17

A federal constitutional error can be harmless provided it is harmless beyond a reasonable doubt.  Stevens v. Commonwealth, 272 Va. 481, 486, 634 S.E.2d 305, 308 (2006).  In conducting a federal constitutional harmless error analysis, the Court must determine " 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' "  Chapman v. California, 386 U.S. 18, 23 (1967) (quoting Fahy v. Connecticut, 375 U.S. 85, 86-87 (1963)).

> In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case.

Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999).

Briscoe was convicted of possession with the intent to distribute cocaine and unlawful transportation of cocaine into the Commonwealth with the intent to distribute.  Magruder, 295 Va. at 293, 657 S.E.2d at 117.  The two certificates of analysis admitted as evidence in his trial established that the substance seized by the police during the execution of a search warrant for Briscoe's apartment and his person was " 'solid material' cocaine" totaling 36.578 grams.  Id. at 292, 657 S.E.2d at 117. Because the nature and amount of the confiscated substance were

18

elements of the charged offenses, see Code §§ 18.2-248 and –

248.01, this Court must determine whether evidence introduced at

Briscoe's trial, other than the certificates of analysis, proved

those particular facts beyond a reasonable doubt.

During the search of Briscoe's apartment, the police

discovered suspected crack cocaine in Briscoe's kitchen sink.

In the kitchen cabinets next to the sink, the police recovered

two scales, sandwich bags, a 100-gram weight, a razor blade, and

a plate.  Several of the objects had what appeared to be crack-

cocaine residue on them, including several tied sandwich bags,

the razor blade, one of the scales, and the plate.  On the

counter next to the sink, the police discovered a small rock of

suspected crack cocaine and an ice tray containing additional

rocks.  Finally, the police recovered additional suspected crack

cocaine on Briscoe's person.

After the search was completed, the police transported

Briscoe to the police department where he then waived his

Miranda rights and made a statement to the police.  The

interviewing police officer testified at trial about the details

of Briscoe's statement.  According to the officer, Briscoe

admitted that everything seized from his apartment, "the coke,

the crack, the baggies," belonged to him as did the item taken

from his person.  He further told the officer that the cocaine

found in the kitchen sink "should have been around 40 grams."

When asked where he obtained the cocaine, Briscoe stated: " '[from] my man in D.C. two weeks ago[;] I brought it over here.' " Briscoe explained that he typically bought a 62-gram package of cocaine "almost every day" and the last time he had purchased that amount was two weeks prior to his arrest. In response to a question about whether his most recent purchase of cocaine was "crack or powder," he answered that it was "hard." He further explained that about half of his purchased cocaine is powder and the other half is "hard, meaning already crack cocaine." Briscoe also admitted that he has "three main guys in D.C." from whom he buys cocaine and that he had made as many as 80 purchases from two of the suppliers.

"[L]ay testimony and circumstantial evidence may be sufficient, without the introduction of an expert chemical analysis, to establish the identity of the substance involved in an alleged narcotics transaction." United States v. Dolan, 544 F.2d 1219, 1221 (4th Cir. 1976); accord Dunaway v. Commonwealth, 52 Va. App. 281, 301, 663 S.E.2d 117, 127 (2008). Even when the identity of a substance is an element of the charged offense, courts "will uphold a conviction as long as the evidence that the substance was illegal is adequate." United States v. Uwaeme, 975 F.2d 1016, 1020 (4th Cir. 1992) (citing United States v. Scott, 725 F.2d 43, 45 (4th Cir. 1984) (upholding a drug-possession conviction although the prosecution introduced

no expert testimony identifying the substance as cocaine but instead presented lay testimony regarding the nature of the substance in question)).

Briscoe's numerous and regular purchases of either "powder" or "crack" cocaine from suppliers in Washington, D.C., as well as his experience with cocaine distribution, demonstrated his familiarity with the illegal drug.  In his statement, he repeatedly referred to the substance seized in his apartment as cocaine and stated that the specific cocaine found in the kitchen sink was about "40 grams."  One ounce is approximately 28.35 grams.  In light of his purchasing and distribution experience, the recovery of scales and drug packaging materials, and his admissions with respect to the nature and amount of the confiscated substance, we conclude that the evidence proved beyond a reasonable doubt that the substance seized during the execution of the search warrant was cocaine and that the amount Briscoe transported into the Commonwealth was "one ounce or more" as required by Code § 18.2-248.01.

When the elements of the charged offenses are established beyond a reasonable doubt by admissible evidence, the erroneous admission of evidence probative of the same elements is harmless.  See Mu'Min v. Commonwealth, 239 Va. 433, 446-47, 389 S.E.2d 886, 895 (1990) (holding that any error resulting from the trial court's admitting into evidence a previous order of

conviction was rendered harmless by the defendant's own statement relating the same facts as those contained in the order).  Because a violation of the Confrontation Clause, like other constitutional violations, is subject to a harmless error analysis, see United States v. Martinez-Rios, 595 F.3d 581, 587 (5th Cir. 2010); United States v. Caraballo, 595 F.3d 1214, 1229 n.1 (11th Cir. 2010), we hold that the admission of the certificates of analysis in violation of Briscoe's Confrontation Clause rights was harmless beyond a reasonable doubt.

CONCLUSION

For these reasons, we will reverse the judgment of the Court of Appeals affirming Cypress' conviction for possession of cocaine with the intent to distribute, second or subsequent offense, vacate the conviction, and remand to the Court of Appeals with directions that the case be remanded to the Circuit Court of the City of Chesapeake for a new trial if the Commonwealth be so advised.[5]  We will, however, affirm the judgment of the Court of Appeals upholding Briscoe's convictions for possession with the intent to distribute cocaine and

---

[5] Cypress' argument that this Court should not remand his case for a new trial but should instead vacate his conviction and dismiss the indictment to avoid "manifest injustice" because he has already served 5 years in confinement is without merit. As the Commonwealth notes, Cypress was actually sentenced to 15 years of incarceration, with 10 years suspended and supervised probation for an indeterminate period.

unlawful transportation of cocaine into the Commonwealth with

the intent to distribute.

Record No. 070815 – <u>Reversed, vacated, and remanded</u>.
Record No. 070817 - <u>Affirmed</u>.

23