Present: Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ., and Russell and Lacy, S.JJ.

D'ANGELO BROOKS

v. Record No. 091047          OPINION BY JUSTICE WILLIAM C. MIMS
                                        June 9, 2011

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals erred when it upheld the denial by the Circuit Court of the City of Petersburg of D'Angelo Brooks' ("Brooks") motion to suppress and conviction for possession of cocaine.

FACTS AND PROCEEDINGS BELOW

On December 10, 2007, police from the City of Petersburg were dispatched to the 400 block of Byrne Street in Petersburg for an anonymous call of shots fired. Officer Brian Billings ("Officer Billings") testified that when he arrived, another officer was already present and had received Brooks' permission to search his house for weapons. The other officer had begun searching the house, but had not found a weapon.

After Officer Billings arrived, the officers received permission to search the area outside of the house and two cars located nearby, but again did not find a weapon. However, Officer Billings found a .22 caliber copper hollow-point cartridge on the stoop of the house, but could not discern whether it was a pistol cartridge or rifle cartridge. Officer

Billings then asked Brooks for permission to search his house for a weapon.  Brooks consented to that request.

During his search of the bedroom, Officer Billings found, inside a tote bag, a gift bag "with some weight in it."  The bag was folded, and Officer Billings unfolded or "unrolled" the gift bag to open it.  Inside, he found a large quantity of cash and a white powdery substance, which later was determined to be cocaine.

Officer Billings left the gift bag in the tote, approached Brooks in a different room, and asked him, "was this his money and his drugs."  Brooks responded affirmatively.  He was arrested for possession of the cocaine.  Further examination of the currency revealed 358 bills of varying denominations.

Prior to trial, Brooks moved to suppress the cocaine as being beyond the scope of his consent to search and his statements as being inadmissible under the doctrine of fruit of the poisonous tree.  The circuit court heard evidence and argument in a combined suppression hearing and trial.  Brooks objected to the admission of the certificate of analysis on the ground that Virginia's then-existing statutory scheme for the admission of the certificate violated the Confrontation Clause

of the Sixth Amendment.[*]  The circuit court overruled that objection and admitted the certificate of analysis.

At the close of the evidence, the court found that the search of the gift bag was within the scope of the consent based, in part, on the weight and shape of the bag.  The court denied the motion to suppress and found Brooks guilty of possession of cocaine.  The Court of Appeals denied Brooks' petition for appeal.  Brooks v. Commonwealth, Record No. 1567-08-2 (Jan. 28, 2009) (unpublished).  Brooks timely filed his notice of appeal, and we granted his petition.

DISCUSSION

Brooks assigns error to the circuit court's denial of his motion to suppress.  He argues that Officer Billings' search of the gift bag exceeded the scope of his consent.  Consequently he argues that the statement he made to Officer Billings concerning ownership of the cocaine was fruit of the poisonous tree.  See Wong Sun v. United States, 371 U.S. 471, 488 (excluding evidence that "has been come at by exploitation of

---

[*] At the time of Brooks' trial, the United States Supreme Court had not yet decided Melendez-Diaz v. Massachusetts, 557 U.S. ___, 129 S.Ct. 2527 (2009).  Nor had this Court reexamined, in light of Melendez-Diaz, the constitutionality of Virginia's former statutory scheme for the admission of certificates of analysis.  Cypress v. Commonwealth, 280 Va. 305, 317, 699 S.E.2d 206, 213 (2010) ("the procedure established in former Code § 19.2-187.1 did not adequately safeguard a criminal defendant's rights under the Confrontation Clause").

3

. . . illegality") (internal quotation marks omitted).  He also argues that the statement was obtained in violation of his Fifth and Sixth Amendment rights because he was not given a Miranda warning.

We review the circuit court's denial of Brooks' motion to suppress in accord with familiar principles:

> A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo on appeal.  In making such a determination, we give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment.  The defendant has the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the trial court's denial of his suppression motion was reversible error.

Jones v. Commonwealth, 277 Va. 171, 177-78, 670 S.E.2d 727, 731 (2009) (internal citations omitted).  See also Ornelas v. United States, 517 U.S. 690, 699 (1996) ("determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal" while findings of historical fact are reviewed for clear error). Furthermore, we "accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008) (internal quotation marks omitted).  "Although objective reasonableness is a question of law, the factual circumstances are highly relevant when determining what the reasonable person

would have believed to be the outer bounds of the consent that was given." United States v. Mendoza-Gonzalez, 318 F.3d 663, 667 (5th Cir. 2003).

The Fourth Amendment guarantees, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches of a person's home are presumptively unreasonable. Glenn, 275 Va. at 130, 654 S.E.2d at 913 (citing Payton v. New York, 445 U.S. 573, 586 (1980)). However, "[i]t is . . . well settled that one of the specifically established exceptions to the requirements of . . . a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). "The scope of a search is generally defined by its expressed object." Id. Officer Billings received permission to search for a "weapon." The scope of the search therefore was limited to places where an objectively reasonable officer could expect to find a weapon. See id.; Lugar v. Commonwealth, 214 Va. 609,

5

611-12, 202 S.E.2d 894, 897 (1974) (consent to search a house for a fugitive gave officers the right to "make a reasonable search of places in the apartment where a fugitive might hide" but not of "spaces which obviously could not hide a man").

The evidence at the suppression hearing was that Officer Billings held the bag and felt that it had "some weight in it." Having heard the testimony of Officer Billings and having viewed the gift bag, the circuit court found that an objectively reasonable officer could have expected to find a weapon in the gift bag based upon the shape and weight of the bag and its contents. We hold that the Court of Appeals did not err in affirming the trial court's judgment that the search of the bag was objectively reasonable. See Jones, 277 Va. at 177-78, 670 S.E.2d at 731. Because the search was permissible under the Fourth Amendment, we need not address Brooks' argument that his statement was fruit of the poisonous tree. See Wong Sun, 371 U.S. at 488.

We now turn to Brooks' argument that his statement to Officer Billings was obtained in violation of his Fifth and Sixth Amendment rights because he was not given a Miranda warning. The Fifth Amendment of the United States Constitution guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." The Sixth Amendment guarantees that "[i]n all

6

criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." In Miranda v. Arizona, 384 U.S. 436, 478 (1966), the Supreme Court of the United States held that "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." In such situations, a Miranda warning must be given to protect the privilege and the individual's "right to the presence of an attorney . . . prior to any questioning if he so desires." Id. at 478-79.

In assessing whether the interrogation was custodial, we inquire "whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (internal quotation marks omitted). We determine custody "based on how a reasonable person in the suspect's situation would perceive his circumstances." Yarborough v. Alvarado, 541 U.S. 652, 662 (2004). To make that determination, we look to the totality of the circumstances and consider all relevant facts, which in Yarborough included: the locus of the questioning; the duration of the interrogation; the disclosure by police that the person was free to leave; the number of

officers present; the ability of the suspect's family to be present; the use of threats; the suggestion of an imminent arrest; and the subject matter and tenor of the questioning. Id. at 664-65.

Here, the relevant facts weigh in favor of a finding that Brooks was not in custody.  There were at most two officers present.  The interrogation consisted of a single question. Brooks was not told that he had to remain present.

Considering the totality of the circumstances, we cannot say that a reasonable person in Brooks' situation would have believed that he was under formal arrest or experienced a "restraint on [his] freedom of movement of the degree associated with a formal arrest."  Beheler, 463 U.S. at 1125 (internal quotation marks omitted).  Accordingly, the Court of Appeals did not err in affirming the circuit court's denial of his motion to suppress the cocaine and his statement.

Finally, Brooks assigns error to the Court of Appeals' affirming the circuit court's admission of the certificate of analysis.  In light of Melendez-Diaz v. Massachusetts, our decision in Cypress v. Commonwealth, 280 Va. 305, 317, 699 S.E.2d 206, 213 (2010), and Brooks' properly preserved objection, as well as the Commonwealth's concessions that the admission of the certificate was error and that the error was

not harmless, Brooks is entitled to a new trial.  We therefore need not address this assignment of error further.

CONCLUSION

For the reasons stated above, we will affirm the judgment of the Court of Appeals as to the denial of the motion to suppress the cocaine and Brooks' statement.  We will reverse the judgment of the Court of Appeals as to the circuit court's admission of the certificate of analysis, vacate Brooks' conviction, and remand the case for a new trial if the Commonwealth be so advised.

Affirmed in part,
reversed in part,
and remanded.

9