COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, McCullough and Decker
Argued at Norfolk, Virginia


CHRISTOPHER JAVON NORMAN

                                                        MEMORANDUM OPINION* BY
v.        Record No. 1058-14-1                    JUDGE STEPHEN R. McCULLOUGH
                                                              APRIL 14, 2015
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
John W. Brown, Judge

Terence P. Martin, Senior Assistant Public Defender (Office of the
Public Defender, on brief), for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


        Christopher Javon Norman challenges his conviction for abduction.  He contends that the

evidence was insufficient to establish the elements of the offense.  Specifically, he argues that

the evidence fails to show that he used force or intimidation to detain the mother of his child

against her will and that she was not, in fact, intimidated.  Guided by the standard of review, we

disagree and affirm.

BACKGROUND

        Appellant fathered a child with Maya Wilson.  At the time of the charged offense, they

had been together about five years.  Maya explained that she and appellant were not living

together, but he would stay at her house five days out of the week.  On September 28, 2013,

appellant planned to spend the night with Maya.  Appellant did not have a key to the house.

Maya's sister, Natasha, and Natasha's boyfriend and children also planned to stay at Maya's

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

house that night.  Following an argument between appellant and Maya, he left the house around 9:00 p.m.  Maya fell asleep in her upstairs bedroom.  Natasha and her boyfriend were downstairs, sleeping on a couch.

Natasha awoke when she heard knocking or banging on the front door.  It was about 4:00 a.m.  She looked outside, through the peephole, but could not see who it was.  The porch light was on, but the person outside was wearing a hoodie and facing his head downward.  After attempting to wake her sister, Natasha returned and opened the front door to look outside but could not see anyone.  She then closed and locked the front door.  A few minutes later, Natasha heard several "booms" coming from the back of the house.  She saw the back door come "off of the hinges, and a form walked past" her.  She knew from his voice that it was appellant.  Appellant then kicked in the door to Maya's upstairs bedroom.  Natasha decided to leave appellant and her sister "to their business."  The Commonwealth introduced into evidence photographs depicting the damage appellant inflicted on the house's back door and Maya's bedroom door.

Maya testified that she awoke to her sister and appellant standing in front of her, yelling.  She also stated that she was awakened by the loud noise that occurred when appellant kicked in the door to her room.  Maya testified that she did not give appellant permission to come back into the house.

Natasha heard a "smacking sound" coming from her sister's bedroom.  She went upstairs to her sister's bedroom.  She observed her sister sitting on the floor and appellant "standing over top of her."  It appeared to Natasha that appellant was going to strike her sister.  Maya was crying.  Natasha could not see any injuries on her sister.  Natasha called the police and told Maya and appellant that she was doing so.  Maya asked her to refrain from calling the police.

Maya and appellant walked out through the back door. As she was walking down the stairs to leave the house, appellant placed his hand on her head. Maya acknowledged that she was "crying and really hysterical" as she left. She explained that her emotional state was due to the way she woke up and to the fact that she was "a little drunk." She testified that she agreed to go for a walk with appellant in an effort to defuse the argument. She claimed she voluntarily left the apartment with him. She said in her trial testimony that she felt safe in her home and walking with appellant. She denied that he had assaulted her. Maya said she did not recall what she told the police. She acknowledged that she took out a restraining order against appellant but explained that she did so at the recommendation of a police officer.

Officer Brian E. Stovall, Jr., responded to Natasha's 9-1-1 call. He began searching for the couple. He soon spotted them. Initially, appellant refused to give his name. Appellant stated that "the two were just out walking and that nothing was going on." Officer Stovall described Maya as appearing "very frightened and distraught." She was weeping at the time.

Appellant was charged with statutory burglary and abduction. Appellant made a motion to strike the abduction charge at the close of the Commonwealth's case and renewed it at the close of the evidence. The court took the motions under advisement. The court later concluded that the evidence was sufficient and convicted appellant, sentencing him to serve eighteen years' incarceration with fourteen years and five months suspended.

ANALYSIS

Relying on the account provided by Maya, appellant argues the evidence fails to establish that he used force or intimidation against her. He points to Maya's testimony that she was not intimidated by appellant. He notes that Maya denied that appellant ever struck her and that she testified that she willingly left the house with appellant. He also points out that Maya's sister, Natasha, never observed appellant exert any force against Maya, never observed Maya resisting,

and did not see any bruises on her sister. Appellant stresses that Maya attributed her crying to the fact that she had been drinking. In short, he argues, Maya's testimony "negates every element of the crime of abduction."

Code § 18.2-47(A) provides that

> [a]ny person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of "abduction."

The established standard of review requires us to "'examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it.'" Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)). "An appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Instead, we must ask whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319). "Furthermore, we 'accord the Commonwealth the benefit of all inferences fairly deducible from the evidence.'" Brooks v. Commonwealth, 282 Va. 90, 95, 712 S.E.2d 464, 466 (2011) (quoting Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008)). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). We will not set aside the judgment of the trial court unless it is plainly wrong or without evidence to support it. Code § 8.01-680; see, e.g., Allen v. Commonwealth, 287 Va. 68, 72, 752 S.E.2d 856, 858-59 (2014).

Under our precedent, an "[a]bduction 'may be accomplished by a minimal amount of force and each case will depend upon the particular facts of the taking.'" Clanton v. Commonwealth, 53 Va. App. 561, 574, 673 S.E.2d 904, 911 (2009) (en banc) (quoting Stancil v. State, 553 A.2d 268, 272 (Md. Ct. Spec. App. 1989)). Abduction may also be accomplished by "intimidation." Code § 18.2-47(A); see Sutton v. Commonwealth, 228 Va. 654, 663, 324 S.E.2d 665, 669-70 (1985) (defining "intimidation" in the context of a rape case).

Maya and Natasha's testimony established that appellant left the house after an argument with Maya. There is no dispute that, several hours after his argument with Maya, appellant gained entry by kicking in the back door of the residence around 4:00 a.m. and followed that up by kicking in the door to Maya's room. Indisputably, such violent acts, particularly at that hour, can intimidate.

Maya and Natasha provided contrasting accounts. Natasha heard a smack after appellant forcibly gained entry into Maya's room. When Natasha arrived in the room, appellant was "standing over top of" Maya, who was crying. Maya and appellant then left, with appellant leading her out with his hand placed on her. When Officer Stovall located the couple, Maya appeared "very frightened and distraught." She was still crying. She took out a protective order against appellant that night. From this evidence, the trial court could conclude that appellant used force and intimidation to compel Maya to leave her house against her will. Appellant's violent entry into the house and the bedroom, the time he gained entry, his intimidating pose, and his guiding her out of the house by placing his hand on her head all combined to frighten Maya into leaving her house against her will in appellant's company, thus depriving her of her personal liberty.

The trial court was not required to accept Maya's version of the events. Trial courts are confronted on a daily basis with victims of domestic abuse who are reluctant to bring to justice

those who frighten and abuse them, whether from motives of affection, financial dependence, ongoing fear, or some other reason.  Trial judges need not blind themselves to these realities when they make factual determinations.  Trial courts may accept or reject the victim's testimony as plausible, depending on the facts of each case.  The trial court's factual conclusions here were neither plainly wrong nor were they without evidence to support them.

CONCLUSION

We affirm the judgment of the trial court.

Affirmed.