UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Russell, Malveaux and Athey
Argued by videoconference


SPENCER KELLY DIXON

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 1609-19-3                 JUDGE CLIFFORD L. ATHEY, JR.
                                                         MARCH 9, 2021

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
                           Edward K. Stein, Judge

        Joseph A. Sanzone (Sanzone and Baker, L.L.P., on brief), for
        appellant.

        Rachel L. Yates, Assistant Attorney General (Mark R. Herring,
        Attorney General, on brief), for appellee.


        Following a bench trial, Spencer Kelly Dixon ("Dixon") was convicted of possession of a

motor vehicle with an altered vehicle identification number ("VIN"), in violation of Code

§ 46.2-1075, and of obtaining property by false pretense, in violation of Code § 18.2-178.  The

trial court sentenced Dixon to six months of incarceration, with six months suspended, on each

charge.  On appeal, Dixon argues that the trial court erred in finding that the evidence was

sufficient to establish that he (1) transferred a motor vehicle with an improper VIN under Code

§ 46.2-1075, and (2) obtained property by false pretenses under Code § 18.2-178.[1]  For the

reasons stated below, we disagree and affirm the judgment of the trial court.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Dixon withdrew a collateral estoppel argument during oral argument, but regardless, he
does not cite any authority in support of this argument and thus waives appellate review of that
issue.  See Rule 5A:20.

## I. FACTUAL BACKGROUND[2]

In the fall of 2018, Norman Knox ("Knox") created a listing on Craigslist to sell his Dodge Neon car. He indicated on the listing that he was willing to accept a trade for a different vehicle, to which Dixon responded via text message. Dixon indicated that he would be willing to trade his 2008 GSSR-750 Suzuki motorcycle for the Dodge Neon.[3] In the correspondence that followed, Knox asked Dixon: "Anything done to it." Dixon responded: "Quick shifter…..new chain with Vortex sprockets and clip ons….Yoshie exhaust with cat delete." Dixon did not mention the vehicle's VIN or any further work done to the motorcycle.

Dixon and Knox met multiple times in person to discuss the motorcycle, as well as gear and stands contemplated in the trade. There was a sticker on the motorcycle indicating that it was a "2009 Suzuki GSSR." Negotiations finally ended with Knox agreeing to trade Dixon his car and title for Dixon's motorcycle and title. Dixon did not indicate at any time that the motorcycle's VIN had been altered, removed, or replaced. After acquiring the motorcycle and seeking to insure it, Knox was denied insurance based upon the title to the motorcycle received from Dixon. In fact, Knox had received from Dixon a title for a DL 650 motorcycle, which did not match the 750 motorcycle he purportedly received from Dixon. Although the motorcycle he received was functional, due to the title not corresponding with the motorcycle, Knox was denied insurance.

Knox then went to the Department of Motor Vehicles ("DMV") to report the issue and subsequently filed a claim with Agent Michael Vineyard ("Vineyard"), an investigator with the

---

[2] Pursuant to familiar appellate principles, the evidence is summarized in the light most favorable to the Commonwealth, the prevailing party at trial. Gerald v. Commonwealth, 295 Va. 469, 472 (2018).

[3] At trial, Knox stated that Dixon offered a "2008" motorcycle but later stated that the sticker on the motorcycle was a "2009."

DMV. In order to commence his investigation, Vineyard required that Knox apply for a title to the motorcycle. In order to comply with Vineyard's request, Knox was issued a title using the VIN off of the title he erroneously received from Dixon. Vineyard then examined the motorcycle Dixon had exchanged with Knox and noticed a "VIN number that looked too perfect." He further noticed that the VIN was on an engraved plate instead of pin stamped on the motorcycle's frame, which is how factories typically apply the VIN to each motorcycle. When Vineyard removed the engraved plate, he observed a flat surface where the original VIN should have been, and it appeared as if the original VIN had been "ground down."

Vineyard then questioned Dixon, who stated that he had purchased the motorcycle two years prior near Raleigh, North Carolina. Dixon went on to state that the motorcycle could not be titled in Virginia because it was a racing motorcycle and was not "street legal." Dixon also admitted that he removed the original VIN and attached a VIN from a Suzuki DL 650 motorcycle. Next, Vineyard reviewed the records for the title Knox actually received from Dixon and found no indication that Dixon had received permission to alter the VIN of the motorcycle.[4] As a result, Vineyard concluded that even though the title for the Suzuki DL 650 given to Knox was valid, the VIN on the motorcycle matched the title only because Dixon had altered it by removing the original VIN and placing a plate with a new VIN on it himself.

At trial, Dixon admitted to purchasing the motorcycle in North Carolina and claimed that the motorcycle did not come with a VIN. He further testified that he then purchased a second motorcycle from eBay and used that frame to construct the motorcycle he traded to Knox. Dixon also admitted to creating a plate and placing the VIN of the motorcycle thereon without obtaining permission from the DMV. Finally, he admitted that he did not tell Knox that he had

---

[4] The DMV may issue a new title and plates for reconstructed vehicles, but the applicant must satisfy statutory requirements. See Code § 46.2-734.

- 3 -

placed a different VIN on the motorcycle but denied ever telling Vineyard that he had removed a VIN from the original motorcycle frame.

At the conclusion of all the evidence, Dixon moved to strike the evidence, arguing that the evidence was insufficient to convict him on either charge. The trial court denied his motion, and opined that, with respect to the first charge of possession of a motor vehicle with an altered VIN:

> He took the VIN number off one vehicle and put it on another vehicle in order to be able to title it because he knew he could not otherwise title it, whether it had . . . a VIN number on when he bought it or it had no VIN number is not particularly relevant. He put a VIN number on . . . a vehicle that didn't belong there. That's a violation of the statute.

Regarding the second charge of obtaining property by false pretense, the trial court further opined that:

> [I]t is clear that he sold what he intended to be a 750 that could be titled to DMV as a 750. Did Mr. Knox actually get a 750 motorcycle? Yes. It had a 750 engine. Apparently it had a 750 frame but as everybody knows, part of buying a motor vehicle is the ability to title it, not to get some title, but to get the title that goes with that motor vehicle. And the problem was, because it had a, an [sic] improper VIN number on it, he cannot title it for what it is. And that was a false pretense because Mr. Dixon had already been through that and knew he . . . had a false VIN number and that was the only reason he was able to title it.

This appeal follows.

## II. ANALYSIS

With respect to assignments of error relating to the sufficiency of the evidence, we review that evidence in the light most favorable to the Commonwealth, as the prevailing party below, and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts

- 4 -

in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the [trial court] who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138 (1995). "Furthermore, we 'accord the Commonwealth the benefit of all inferences fairly deducible from the evidence.'" Brooks v. Commonwealth, 282 Va. 90, 95 (2011) (quoting Glenn v. Commonwealth, 275 Va. 123, 130 (2008)). In a challenge to the sufficiency of the evidence, we must "examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it." Commonwealth v. McNeal, 282 Va. 16, 20 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652 (2008)).

POSSESSION OF A VEHICLE WITH AN ALTERED VEHICLE IDENTIFICATION NUMBER

Dixon first challenges the sufficiency of the evidence in support of his conviction of possession of a vehicle with an altered VIN under Code § 46.2-1075. He specifically contends that the Commonwealth's evidence was not sufficient to prove that he either transferred the motorcycle to Knox with an improper VIN or that his conduct in this case requires the consent of DMV as enumerated in the statute.

Code § 46.2-1075 provides that: "Any person who shall knowingly have in his possession a motor vehicle . . . whose motor number, serial number, identification number, decal or device as required by federal law has been removed, changed, or altered without the consent of the Department shall be guilty of a Class 6 felony."

Dixon admits that he modified the motorcycle, but he argues that changing the parts and affixing a Suzuki 650 VIN on it does not require him to get permission from the DMV because the VIN on the motorcycle matches the title. However, the trial court heard competent testimony that Dixon took the VIN from one motorcycle and placed it on another because he knew that the

original would be unable to be titled otherwise. Additionally, Vineyard testified that Dixon admitted to removing the VIN in order to make the vehicle "street legal" in Virginia. While Dixon claims otherwise, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Flanagan v. Commonwealth, 58 Va. App. 681, 702 (2011) (quoting Marable v. Commonwealth, 27 Va. App. 505, 509-10 (1998)). Given the evidence presented at trial, there was sufficient evidence to prove Dixon violated Code § 46.2-1075 because he affixed a VIN from another motorcycle onto the motorcycle he traded to Knox without the permission of the DMV. Accordingly, Dixon's conviction was not plainly wrong or without evidence to support it.

### OBTAINING PROPERTY BY FALSE PRETENSES

Dixon also challenges the sufficiency of the evidence regarding his conviction for obtaining property by false pretenses in violation of Code § 18.2-178. He contends that there was insufficient evidence of his intent to defraud Knox and that his conduct in this case did not rise to the level of an actual fraudulent transaction.

Code § 18.2-178, which states in pertinent part: "If any person obtain, by any false pretense or token, from any person, with intent to defraud, money, a gift certificate or other property that may be the subject of larceny, he shall be deemed guilty of larceny thereof . . . ." "This statute requires the Commonwealth to prove the following elements: 'an intent to defraud, an actual fraud, use of false pretenses for the purpose of perpetrating the fraud, and accomplishment of the fraud by means of the false pretenses used for that purpose.'" Gardner v. Commonwealth, 32 Va. App. 595, 598 (2000) (quoting Quidley v. Commonwealth, 221 Va. 963, 965 (1981)). "In determining whether the intent has been proven, the factfinder may consider the conduct of the person involved and all the circumstances revealed by the evidence." Cuffee v. Commonwealth, 61 Va. App. 353, 369 (2013) (quoting Wynn v. Commonwealth, 5 Va. App.

- 6 -

283, 292 (1987)).  "[W]hether the required intent exists is generally a question for the trier of fact."  Id. (quoting Nobles v. Commonwealth, 218 Va. 548, 551 (1977)).

Here, Dixon admitted that he attached a DL 650 Suzuki VIN to the motorcycle he traded to Knox, which was purported to be a GSSR-750.  When Knox asked Dixon if there had been any alterations to the motorcycle, Dixon did not inform Knox that the VIN had been changed.  Knox could not legally operate a motorcycle that had a VIN changed without DMV permission, which became clear when Knox wasn't able to insure the motorcycle.  Additionally, Dixon admitted to Vineyard that he knowingly replaced the VIN because the GSSR-750 was not "street legal," and a title could not be obtained otherwise.  Given this evidence, the trial court could have reasonably concluded that Dixon had the requisite intent to defraud Knox.  Accordingly, Dixon's conviction for violating Code § 18.2-178 was neither plainly wrong nor without evidence to support it.

### III. CONCLUSION

For these reasons, we affirm the decision of the trial court.

Affirmed.