# Matter of Shelley Vanessa DINGUS, Respondent

*Decided April 22, 2022*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) If a State court's nunc pro tunc order modifies or amends the subject matter of a conviction based on a procedural or substantive defect in the underlying criminal proceedings, the original conviction is invalid for immigration purposes and we will give full effect to the modified conviction; however, if the modification or amendment is entered for reasons unrelated to the merits of the underlying proceedings, the modification will not be given any effect and the original conviction remains valid. *Matter of Pickering*, 23 I&N Dec. 621 (BIA 2003), *rev'd on other grounds*, *Pickering v. Gonzales*, 465 F.3d 263 (6th Cir. 2006), followed.

(2) Section 18.2-248 of the Virginia Code, which criminalizes the distribution of a controlled substance, is divisible with respect to the identity of the specific "controlled substance" involved in a violation of that statute.

FOR THE RESPONDENT: Benjamin J. Osorio, Esquire, Fairfax, Virginia

FOR THE DEPARTMENT OF HOMELAND SECURITY: Suzanne L. Jackson, Assistant Chief Counsel

BEFORE: Board Panel: GOODWIN and GORMAN, Appellate Immigration Judges. Concurring Opinion: GREER, Appellate Immigration Judge.

GORMAN, Appellate Immigration Judge:

In a decision dated May 21, 2020, an Immigration Judge found the respondent to be removable as charged, denied her application for a waiver of inadmissibility under section 212(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(h) (2018), and ordered her removed from the United States. On appeal, the respondent contests the Immigration Judge's determination that her Virginia conviction for distributing a controlled substance renders her ineligible for a section 212(h) waiver, arguing that a State court issued a nunc pro tunc order reflecting that she was not convicted of distributing a substance controlled by Federal law. The Department of Homeland Security ("DHS") opposes the appeal. Because the nunc pro tunc order reflects the respondent has not been "convicted" of an offense relating to a controlled substance within the meaning of the INA, the

respondent's appeal will be sustained and the record will be remanded for further proceedings.[1]

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of the United Kingdom who was admitted to the United States as a lawful permanent resident in 2012.  In 2017, she was convicted of five counts of distribution of a controlled substance under schedule I/II of the Virginia controlled substances schedules, in violation of section 18.2-248 of the Virginia Code.  The State indictments specify that the controlled substance distributed was oxycodone, a schedule II controlled substance under Virginia law.  The plea agreement provides that the respondent pled guilty to distribution of a schedule II controlled substance but does not specify the substance distributed.  The respondent was sentenced to 20 years of imprisonment for this offense.

In 2019, a Virginia court issued a nunc pro tunc order correcting the 2017 plea agreement and order of conviction.  The nunc pro tunc order reflects that the respondent was found guilty of five counts of distribution of a schedule I controlled substance—namely, salvinorin A—pursuant to section 18.2-248.  The only difference between the original order and the subsequent nunc pro tunc order is the identity of the controlled substance distributed.  It does not modify the respondent's sentence.  Unlike oxycodone, which is listed in the State indictments and is a controlled substance under the Federal Controlled Substances Act,[2] the substance listed on the nunc pro tunc order, salvinorin A, is not federally controlled.

After the Virginia court issued the nunc pro tunc order, the respondent sought to reenter the United States.  DHS deemed her to be seeking an admission, alleging that her conviction was an offense identified in section 212(a)(2) of the INA, 8 U.S.C. § 1182(a)(2), that rendered her subject to the exception to the general admissibility of lawful permanent residents pursuant to section 101(a)(13)(C)(v) of the INA, 8 U.S.C. § 1101(a)(13)(C)(v) (2018).[3]  The respondent was placed in removal proceedings through the service of a notice to appear, which alleged, among other things, that her conviction under section 18.2-248 involved salvinorin A.  Based on this allegation, DHS charged her with removability under section

---

[1]  The respondent's request for oral argument is denied.

[2]  *See* 21 U.S.C. § 812, schedule II(a) (2018); 21 C.F.R. § 1308.12(b)(1)(xiv) (2021).

[3]  Section 101(a)(13)(C)(v) provides, in relevant part, that a lawful permanent resident shall be deemed to be seeking an admission if he or she "has committed an offense identified in section 212(a)(2), unless since such offense the alien has been granted relief under section 212(h)."

212(a)(2)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(2)(A)(i)(I), as a respondent convicted of a crime involving moral turpitude.[4]

The respondent, through counsel, admitted all of the allegations in the notice to appear but contested her removability under section 212(a)(2)(A)(i)(I). The Immigration Judge, without separate analysis, concluded that the respondent was removable as charged based on the conviction documents in the record and accepted the respondent's application for a section 212(h) waiver.

DHS filed a motion to pretermit the respondent's section 212(h) application based on her controlled substance conviction. The respondent argued that although DHS had not filed a Form I-261 (Additional Charges of Inadmissibility/Deportability), its motion nevertheless argued for pretermission based on the claim that her conviction related to the federally controlled substance, oxycodone, rather than the substance actually alleged in the notice to appear, salvinorin A.

On May 20, 2020, the Immigration Judge issued a written decision granting DHS' motion to pretermit the respondent's section 212(h) application.[5] She determined the respondent had been convicted of a violation involving a federally controlled substance under section 212(a)(2)(A)(i)(II) of the INA, 8 U.S.C. § 1182(a)(2)(A)(i)(II), which could not be waived under section 212(h).[6] Citing *Matter of Thomas and Thompson*, 27 I&N Dec. 674, 675 (A.G. 2019), the Immigration Judge found the respondent had not met her burden of establishing that the nunc pro tunc order was issued to correct a procedural or substantive defect in the underlying criminal proceeding, rather than for reasons relating to rehabilitation or immigration hardships. Accordingly, the Immigration Judge gave no effect to the nunc pro tunc order. On May 21, 2020, the Immigration Judge issued an oral decision, in which she incorporated her written decision, denying the respondent's application for a section 212(h) waiver and ordering her removed from the United States.

---

[4]  DHS also charged the respondent with removability under section 212(a)(2)(B) of the INA, 8 U.S.C. § 1182(a)(2)(B), as a respondent convicted of two or more offenses for which the aggregate sentences to confinement were 5 years or more. The respondent conceded before the Immigration Judge that she was removable as charged under this provision, and she does not contest her removability under section 212(a)(2)(B) on appeal.

[5]  Although DHS separately moved to sustain the charges of removability, the Immigration Judge did not analyze those charges in her May 20, 2020, decision. She observed that the charges of removability were previously sustained, and she was only addressing the respondent's eligibility for a section 212(h) waiver.

[6]  Section 212(h) may only be used to waive a respondent's inadmissibility under section 212(a)(2)(A)(i)(II) if that inadmissibility "relates to a single offense of simple possession of 30 grams or less of marijuana."

Prior to rendering the oral decision, the Immigration Judge reviewed the record and inquired whether DHS intended to amend the allegations in the notice to appear to reflect that the substance underlying the respondent's controlled substance conviction was oxycodone, rather than salvinorin A.[7] At her insistence, DHS orally amended the allegation in the notice to appear, and the Immigration Judge crossed out "salvinorin A" and wrote "oxycodone" on the charging document. During this exchange, the respondent was not afforded an opportunity to plead to the orally amended allegation. The respondent's previous denial as to the section 212(a)(2)(A)(i)(I) charge of removability was noted, but no additional pleadings were taken.

On appeal, the respondent argues that the Immigration Judge erred in denying her application for a section 212(h) waiver because the nunc pro tunc order reflects that her original conviction for distributing a schedule II substance is no longer a valid "conviction" for an offense relating to a federally controlled substance under section 212(a)(2)(A)(i)(II) of the INA, 8 U.S.C. § 1182(a)(2)(A)(i)(II). Thus, the respondent contends that her 2017 conviction does not render her ineligible for a section 212(h) waiver. Because she challenges the oral modification to the notice to appear, she also effectively challenges her removability as a respondent convicted of a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(2)(A)(i)(I).

## II.  BACKGROUND

In *Matter of Pickering*, 23 I&N Dec. 621, 625 (BIA 2003), *rev'd on other grounds*, *Pickering v. Gonzales*, 465 F.3d 263 (6th Cir. 2006), we set forth a test for determining whether a State court's order vacating a respondent's conviction renders that conviction invalid for purposes of section 101(a)(48)(A) of the INA, 8 U.S.C. § 1101(a)(48)(A).[8] In this regard, we

---

[7]   DHS stated that it intended to file a Form I-261 to amend the allegation in the notice to appear to "OxyContin." However, a Form I-261 was never submitted. The Immigration Judge ultimately determined that a Form I-261 was not needed and the respondent was not "materially prejudice[d]" by DHS' oral motion to amend the notice to appear because it has "been clear the intent of [DHS] from the onset of [the proceedings was] to argue that it was oxycodone, notwithstanding the Notice to Appear."

[8]   Section 101(a)(48)(A) defines the term "conviction" for immigration purposes as

> a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
>> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

found that "there is a significant distinction between convictions vacated on the basis of a procedural or substantive defect in the underlying proceedings and those vacated because of post-conviction events, such as rehabilitation or immigration hardships." *Id.* at 624. Accordingly, we held that "if a court with jurisdiction vacates a conviction based on a defect in the underlying criminal proceedings, the respondent no longer has a 'conviction' within the meaning of section 101(a)(48)(A)." *Id.* However, if "a court vacates a conviction for reasons unrelated to the merits of the underlying criminal proceedings, the respondent remains 'convicted' for immigration purposes." *Id.* In determining whether a conviction was vacated "on the basis of a defect in the underlying criminal proceedings," we stated that Immigration Judges and this Board should examine "the law under which the [State] court issued its order and the terms of the order itself, as well as the reasons presented by the respondent in requesting that the court vacate the conviction." *Id.* at 625.

More recently, in *Matter of Thomas and Thompson*, 27 I&N Dec. at 680, the Attorney General concluded that the test set forth in *Matter of Pickering* for determining the immigration consequences of a State vacatur order "should apply to state-court orders that modify, clarify, or otherwise alter the term of imprisonment" for purposes of section 101(a)(48)(B) of the INA, 8 U.S.C. § 1101(a)(48)(B).[9] The Attorney General held that such orders will have legal effect for purposes of section 101(a)(48)(B) if "they are based on a procedural or substantive defect in the underlying criminal proceeding, but not if they are based on reasons unrelated to the merits, such as rehabilitation or immigration hardship." *Id.*[10]

The Attorney General explained that "[a]pplying the *Pickering* test to all sentence alterations . . . ensures that aliens who have committed significant crimes, as identified by Congress, do not later avoid the immigration consequences of those actions." *Id.* at 683; *see also id.* at 682 ("Congress made clear [in section 101(a)(48)] that immigration consequences should flow from the original determination of guilt."). "Furthermore, the application of [this] test to state-court sentence alterations promotes uniformity in the law" and "eliminates the need to assess th[e] broad array of

---

        (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

[9] Section 101(a)(48)(B) defines "a term of imprisonment" as "the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part."

[10] While the respondent argues that *Matter of Thomas and Thompson* was wrongly decided, we are bound by decisions of the Attorney General. *See, e.g.*, *Matter of Guevara Alfaro*, 25 I&N Dec. 417, 423 (BIA 2011) (noting that absent otherwise controlling authority, Immigration Judges and the Board are bound to apply the Attorney General's decisions).

state procedures." *Id.* at 683–84. The Attorney General observed that the different tests the Board applied in its prior precedents to sentence modifications led to inconsistent outcomes, and he overruled those decisions. *Id.* at 677–80 (overruling the Board's decisions in *Matter of H. Estrada*, 26 I&N Dec. 749 (BIA 2016), *Matter of Cota*, 23 I&N Dec. 894 (BIA 2005), and *Matter of Song*, 23 I&N Dec. 173 (BIA 2001)).

## III.  ANALYSIS

### A.  Subject Matter Modifications and Amendments

Unlike the sentencing modifications in *Matter of Thomas and Thompson*, the nunc pro tunc order in this case does not alter the respondent's sentence. Rather, it amends the subject matter of her conviction—namely, the particular controlled substance she was convicted of distributing in 2017. As noted, she was charged with distributing oxycodone, a federally controlled substance and pled guilty to distributing a schedule II controlled substance under Virginia law. However, the nunc pro tunc order states that the parties intended the respondent to be convicted of five counts of distributing salvinorin A, a schedule I controlled substance under State law.

Because all substances listed under schedule II of the Virginia controlled substance schedules were federally controlled at the time of the respondent's offense,[11] her original conviction for distribution of a schedule II substance would render her ineligible for a section 212(h) waiver, if it is valid for immigration purposes. However, if the nunc pro tunc order renders the original conviction invalid, then we must look to the subject matter modification in assessing her removability and eligibility for a waiver. For the reasons set forth below, we conclude that the test in *Matter of Pickering* regarding the validity of vacated convictions also applies in determining whether the State court's nunc pro tunc order modifying or amending the subject matter of the respondent's conviction affects the validity of her original conviction.

Subject matter modifications change the very nature of the conviction and, therefore, are similar to a vacatur. Like a vacatur, the subject matter modification eliminates the guilt of the original conviction; however, it also convicts the individual of something different. Because the very nature of the conviction has changed, we find it appropriate to determine whether that change was made for purposes of rehabilitation or to avoid immigration hardships or because of a procedural or substantive defect in the underlying criminal proceedings. Consequently, we find it logical to apply the test we

---

[11]  *Compare* Va. Code Ann. § 54.1-3448 (West 2017), *with* 21 C.F.R. § 1308.12.

set forth in *Matter of Pickering* for vacaturs to subject matter modifications or amendments to criminal convictions.

Applying one uniform test to vacaturs and subject matter modifications is also consistent with the Attorney General's decision in *Matter of Thomas and Thompson*, which supported the uniform application of one test to determine the consequences of sentence modifications. Applying the *Pickering* test to all modifications of State court orders—including subject matter modifications and amendments to criminal convictions—promotes uniformity and consistency in the adjudication of cases before the Immigration Judges and this Board.

Furthermore, applying the *Pickering* test to subject matter modifications and amendments is consistent with Congress' clear intention that immigration consequences should flow from significant criminal convictions. *See generally Saleh v. Gonzales*, 495 F.3d 17, 23–24 (2d Cir. 2007) (discussing the legislative history of section 101(a)(48) of the INA, 8 U.S.C. § 1101(a)(48), which indicates that Congress did not intend "aliens who have clearly been guilty of criminal behavior" to "escape[] the immigration consequences normally attendant upon a conviction" based on the vagaries of State "provisions for ameliorating the effects of a conviction" (quoting H.R. Rep. No. 104-828, at 224 (1996) (Conf. Rep.))). As noted, the Attorney General extended the *Pickering* test to sentence modifications for the same reasons. *See Matter of Thomas and Thompson*, 27 I&N Dec. at 682–83.

Finally, applying the *Pickering* test to subject matter modifications is consistent with the approaches taken by most circuit courts when determining whether changes to a conviction should be given effect for immigration purposes. *See Matter of Marquez Conde*, 27 I&N Dec. 251, 253 (BIA 2018) (collecting cases);[12] *see also Viveiros v. Holder*, 692 F.3d 1, 3 (1st Cir. 2012) (noting that circuit courts have "uniformly" followed the approach in *Pickering*).

Accordingly, to determine the immigration consequences of a State court order modifying or amending the subject matter of a conviction, such as the respondent's nunc pro tunc order, we apply the test set forth in *Matter of Pickering*, examining whether the State court modified or amended the subject matter of a conviction based on a substantive or procedural defect in the underlying criminal proceedings. If that is the case, the original conviction is not valid for immigration purposes, and we give full effect to

---

[12] In *Matter of Marquez Conde*, 27 I&N Dec. at 255, we reaffirmed our holding in *Matter of Pickering*, modifying it to the extent it exempted the United States Court of Appeals for the Fifth Circuit from its holding, and held that the *Pickering* test applied nationwide. Since we issued *Matter of Marquez Conde*, the Fifth Circuit has not issued a precedential decision rejecting the application of *Matter of Pickering* to a case arising in its jurisdiction.

the amendment or modification and look to the amended conviction in adjudicating a case.  However, if the amendment or modification was entered for reasons unrelated to the merits of the underlying criminal proceedings, we do not give effect to the subject matter modification and look to the original conviction.

In making this assessment, we look to the law under which a State court issued the order amending or modifying the subject matter of a conviction, the terms of the order itself, and the reasons the respondent requested to have the conviction amended or modified.  *See Matter of Pickering*, 23 I&N Dec. at 625.  To assist Immigration Judges and this Board in making this assessment, the party bearing the relevant burden of proof should provide the Immigration Court with as much documentation and information as possible relating to the modification or amendment.[13]  Such documentation and information could include, but is not limited to, copies of the nunc pro tunc order and the motions filed with the court that issued the nunc pro tunc order, as well as the State law upon which the subject matter modification or amendment was based.  We note that since some nunc pro tunc orders do not identify the reasons for the corrected order, the ascribed burden may not be met without also including this additional documentation and information.

In the respondent's case, the State court's nunc pro tunc order provides there were "errors on the face of the judgment entered February 3, 2017, and that the parties intended for the [respondent] to be convicted of five (5) counts of Distribution of a Schedule I Controlled Substance (to wit:  Salvinorin A)" under section 18.2-248.  The nunc pro tunc order additionally states that the respondent requested that the State court "correct the record *nunc pro tunc*, arising from scrivener's errors in the plea agreement" and the conviction order.  The order further provides that the respondent "with the agreement of the Commonwealth's Attorney, informs the court that the parties intended the [respondent] to plead guilty to, and be convicted of" five counts of distribution of salvinorin A under section 18.2-248 "and no other charges."  Although the order references a motion filed by the respondent to the State court to correct the conviction record

---

[13]  Which party bears the burden of proof depends "on the procedural posture of the case at hand."  *Matter of Thomas and Thompson*, 27 I&N Dec. at 689 (explaining that the Board and circuits have allocated the burden of proof regarding the *Pickering* test in different ways depending on the procedural posture).  For example, the party that bears the burden of proving whether a conviction remains valid and renders a respondent removable will depend on whether the respondent is "an applicant for admission," claims to be "lawfully present in the United States pursuant to a prior admission," or "has been admitted."  INA § 240(c)(2), (3)(A), 8 U.S.C. § 1229a(c)(2), (3)(A) (2018); 8 C.F.R. § 1240.8(a)–(c) (2021).  However, with respect to establishing eligibility for relief from removal, a respondent shall have the burden of establishing that the conviction is no longer valid and does not bar relief.  8 C.F.R. § 1240.8(d).

nunc pro tunc, that motion was not submitted to the Immigration Judge and is not part of the record of proceedings.

The parties do not dispute that the State court judge had the legal authority to correct the controlled substance the respondent was convicted of distributing in a nunc pro tunc order. Similarly, no temporal or other procedural limitations to the nunc pro tunc order were raised in this case. The Supreme Court of Virginia has stated, "A court has power to make an entry *nunc pro tunc*, in the exercise of its discretion, to correct the court's records so that they speak the truth." *Jefferson v. Commonwealth*, 607 S.E.2d 107, 110 (Va. 2005) (citing *Council v. Commonwealth*, 94 S.E.2d 245, 248 (Va. 1956)). Significantly, this power is restricted and cannot be used "to supply an error of the court or to show what the court should have done as distinguished from *what actually occurred*." *Id.* (emphasis added) (quoting same).

We therefore disagree with the Immigration Judge that the nunc pro tunc order did not modify the controlled substance underlying the respondent's conviction based on a procedural or substantive defect in the underlying proceedings. *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2021). We conclude that the nunc pro tunc order renders the original conviction invalid for immigration purposes, and we must give the modified conviction full effect and look to the identity of the controlled substance in the amended conviction in assessing the respondent's removability and her eligibility for relief.[14]

## B. 212(h) Waiver

In light of the nunc pro tunc order, we agree with the respondent that her conviction under section 18.2-248 of the Virginia Code is not a valid "conviction" for a violation relating to a controlled substance within the meaning of section 212(a)(2)(A)(i)(II) of the INA, 8 U.S.C. § 1182(a)(2)(A)(i)(II), that renders her ineligible for a section 212(h) waiver. To qualify as a controlled substance violation under the INA, the respondent's conviction must have necessarily involved a federally controlled substance. *See Mellouli v. Lynch*, 575 U.S. 798, 812–13 (2015). We determine whether the respondent's Virginia conviction necessarily involved a federally controlled substance by employing the categorical approach, focusing on the "minimum conduct criminalized" by the elements of the State statute. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013).

---

[14] Although the reasons for the modification are clear in this case based on the language of the nunc pro tunc order itself and State law, the reasons a State court modified a conviction may not always be clear. In such circumstances, the party bearing the relevant burden of proof must submit sufficient evidence to establish the reasons for the subject matter modification.

At the time of the respondent's offense, section 18.2-248(A) of the Virginia Code provided that "it shall be unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance." Because Virginia includes in its controlled substance schedules at least one substance not listed on the Federal schedules, section 18.2-248 is categorically overbroad. We therefore look to whether the identity of the substance distributed is an element of the statute, making it divisible with respect to the specific substance distributed, and allowing us to examine the record of conviction under the modified categorical approach to determine whether that substance is controlled under Federal law. *See Mathis v. United States*, 579 U.S. 500, 505–06 (2016); *see also Matter of Laguerre*, 28 I&N Dec. 437, 447 (BIA 2022).

We are persuaded that the identity of the substance distributed is an element of section 18.2-248 and that the statute is divisible on that basis. *See Cucalon v. Barr*, 958 F.3d 245, 253 (4th Cir. 2020) (concluding that section 18.2-248 is divisible by substance); *United States v. Vanoy*, 957 F.3d 865, 868 (8th Cir. 2020) (same). Virginia courts have "definitively answer[ed] the question" of divisibility. *Mathis*, 579 U.S. at 517. In *Cypress v. Commonwealth*, 699 S.E.2d 206, 213–14 (Va. 2010), the State Supreme Court held that the identity of the controlled substance is an element of section 18.2-248 and the State is required to prove the specific substance distributed beyond a reasonable doubt. *See also Cucalon*, 958 F.3d at 251–52 ("[U]nder the court's decision in *Cypress*, [section] 18.2-248 requires proof of the identity of the prohibited substance as an element of the offense."). We may therefore examine the conviction record to determine what specific substance the respondent was convicted of distributing. *See Mathis*, 579 U.S. at 505–06.

The nunc pro tunc order, to which we give full effect, unambiguously specifies that the respondent was convicted of distributing salvinorin A, which, as noted, is not federally controlled. Consequently, based on the record before us, the respondent's conviction is not a controlled substance violation within the meaning of section 212(a)(2)(A)(i)(II) of the INA, 8 U.S.C. § 1182(a)(2)(A)(i)(II). Thus, it does not render her ineligible for a section 212(h) waiver. We will therefore remand the record to the Immigration Judge to assess whether the respondent is otherwise eligible for a waiver of inadmissibility under section 212(h) of the INA, 8 U.S.C. § 1182(h).

On remand, the Immigration Judge should also reassess and enter new findings of fact regarding the allegation in the notice to appear relating to the respondent's controlled substance conviction. The orally amended allegation, to which the respondent was not permitted to plead, does not reflect the substance the respondent was convicted of distributing in

accordance with the nunc pro tunc order, which we have given full effect. In light of the nunc pro tunc order and the lack of a concession to the charge, the Immigration Judge should make further findings of fact and reanalyze whether the respondent's conviction, as amended by the nunc pro tunc order, renders her removable under section 212(a)(2)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(2)(A)(i)(I), as a respondent convicted of or who admits committing acts which constitute the essential elements of a crime involving moral turpitude.[15] *See Matter of J.M. Acosta*, 27 I&N Dec. 420, 423 (BIA 2018) (providing that a substance underlying a controlled substance crime need not be federally controlled for that crime to involve moral turpitude because it is the act of distributing a controlled substance that is morally turpitudinous, not the specific substance involved). Accordingly, the respondent's appeal is sustained and the record is remanded for further proceedings.

**ORDER:** The respondent's appeal is sustained and the decision of the Immigration Judge is vacated.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

*CONCURRING OPINION*: Anne J. Greer, Appellate Immigration Judge

I concur in the outcome of this case. I would conclude that *Matter of Thomas and Thompson*, 27 I&N Dec. 674 (A.G. 2019), which applies to changes in criminal sentences, is not relevant. I would instead conclude that *Matter of Pickering*, 23 I&N Dec. 621 (BIA 2003), *rev'd on other grounds*, *Pickering v. Gonzales*, 465 F.3d 263 (6th Cir. 2006), clearly controls and apply it in a straightforward manner without extraneous discussion. The State court's nunc pro tunc order specifies that it corrected the identity of the substance distributed because of "errors on the face of the judgment." Furthermore, as the majority recognizes, the authority of Virginia courts to correct a conviction record nunc pro tunc "extends no further than the power to make the record entry speak the truth." *Council v. Commonwealth*, 94 S.E.2d 245, 248 (Va. 1956). As stated in *Matter of Pickering*, 23 I&N Dec. at 624, "if a court with jurisdiction vacates a conviction based on a defect in the underlying criminal proceedings, the respondent no longer has a 'conviction' within the meaning of section 101(a)(48)(A)."

Pursuant to *Matter of Pickering*, the respondent's conviction has been clearly altered in a way that demonstrates that the State court corrected

---

[15] Regardless, as set forth above, the respondent remains removable as charged under section 212(a)(2)(B) of the INA, which was not challenged on appeal.

a substantive defect in the underlying criminal proceedings. Accordingly, the nunc pro tunc order is the functional equivalent of a vacatur.

I agree with the majority opinion that the criminal statute at issue is divisible and the modified categorical approach applies. I also agree that based on the State court's nunc pro tunc order, the respondent is not ineligible for a 212(h) waiver for having been convicted of a controlled substance offense. I would therefore remand for further consideration of the respondent's eligibility for that waiver. Finally, I would remand for the Immigration Judge to address the sole remaining issue whether the respondent's conviction constitutes a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2018), that renders her removable. *E.g.*, *Matter of Gonzalez Romo*, 26 I&N Dec. 743, 746 (BIA 2016) (stating that we have long held that a conviction for distribution of a controlled substance is one for a crime involving moral turpitude).